UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN WILLIAM SCOTT, et al.,

    Plaintiffs,

v.                                                                                Case No. 3:25cv974-TKW-HTC

NOAH SHAW,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff John William Scott, proceeding *pro se* and *in forma pauperis*, has filed a complaint under 42 U.S.C. § 1983 alleging Defendant Noah Shaw interfered with the custody of his children. Doc. 1. Shaw has moved to dismiss the complaint on multiple grounds, including that the Court should abstain from hearing this case under the domestic relations exception to jurisdiction. Doc. 11. After reviewing the complaint, the motion, Scott's response (Doc. 13), the relevant law, and Scott's state court litigation, the undersigned finds that the claims Scott raises would require the Court to become enmeshed in disputes regarding the custody of Scott's children—a matter best addressed by the State. Thus, the Court should abstain from exercising jurisdiction over this domestic matter and GRANT Shaw's motion.

I.  **Background**[1]

In late 2023, Shaw, an employee with Families First Network ("FFN"), was assigned as a case manager to the Scott family. Shaw stated an investigative summary produced by Bea Batchelor for the Florida Department of Children and Families ("DCF") listed Scott's spouse ("Mrs. Scott") as a victim of domestic violence. Scott provided "copies of all the official documentation" that demonstrated he was actually the victim, and the investigative summary was inaccurate. Shaw said he could not consider the documentation Scott provided and the only documentation that mattered was the investigative summary. In communications with DCF, Scott complained that Shaw's actions "were criminal," violated his civil rights, and entitled him to relief. But "[n]o relief has been provided."

On January 6, 2024—three days after Scott filed for divorce—Mrs. Scott "absconded" from their home. She drove away "without a valid driver's license and without valid insurance." Scott contacted Shaw repeatedly "in the hopes of maintaining the … parent child bond" with his three minor children but Shaw stopped communicating with Scott in February or March of 2024.

Scott spoke with Shaw's supervisor, Beverly Orezzoli, and other FFN staff during a meeting at the FFN office in Crestview, Florida. Orezzoli "supported …

---

[1] The following factual allegations are derived from Scott's complaint.

Shaw's statement and actions during the meeting." Scott asked Orezzoli what standard operating procedures or regulatory guidelines applied to FFN case managers. Orezzoli stated, "our case managers don't have specific rules or guidelines, what we do is not black or white, it's grey." Orezzoli provided Scott with the contact information for Bobbi Lowe, who serves as the contract coordinator for NWFL Health Systems and FFN. NWFL Health Systems provided "case management under contract from" DCF.

During a phone call, Lowe told Scott that FFN case managers operate under the same rules and guidelines as DCF investigators but a "detailed list of rules and guidelines" for FFN case managers would not be provided to Scott to allow him to "audit [FFN staff's] actual field practices."

Scott learned Mrs. Scott was serving intermittent incarceration for a DUI charge in Walton County. On June 4, 2024, Scott traveled to Mrs. Scott's home in Crestview, but he was not allowed to take custody of the children and remove them from Mrs. Scott's home. Scott contacted the Crestview Police Department. When the responding officers called Shaw, Shaw said "he told the mother he could not withhold the minor children's location from [Scott], but decided not to disclose the children's location after speaking with the mother." Scott views this comment as "a confession of conspiracy."

Shaw also informed the officers that a DCF-issued "safety plan"[2] was in effect, limiting Scott's custodial access to his children. The purported safety plan transferred Scott's "parental decision-making authority to a nineteen-year-old male with disabling medical conditions and no legal authority to serve in loco parentis." Scott contends no valid safety plan existed at that time and he had not received notice, a hearing, or an opportunity to contest such a restriction on access to his children. Scott maintains he "was denied custodial access" to his children for approximately 155 days "due to the conspiracy developed and implemented by" Shaw.

Based on the foregoing, Scott alleges Shaw: (1) violated his procedural and substantive due process rights under the Fourteenth Amendment; (2) violated his equal protection rights under the Fourteenth Amendment; and (3) is liable for intentional infliction of emotional distress ("IIED"). As relief, Scott seeks compensatory and punitive damages.

## II.   Discussion

Shaw seeks dismissal of Scott's complaint on multiple grounds. In part, he argues the Court should abstain from hearing this case under the domestic relations

---

[2] Under Florida law, a "safety plan" is defined as "a plan created to control present or impending danger using the least intrusive means appropriate to protect a child when a parent, caregiver, or legal custodian is unavailable, unwilling, or unable to do so." Fla. Stat. § 39.01(78).

exception to jurisdiction because it would require the Court to "delve into the parties' domestic affairs." Doc. 11 at 4.

"The federal judiciary has traditionally abstained from deciding cases concerning domestic relations." *Ingram v. Hayes*, 866 F.2d 368, 369 (11th Cir. 1988) ("federal courts generally dismiss cases involving divorce and alimony, child custody, visitation[] rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification"). The doctrine imposes two limits on federal courts' power: (1) courts may not issue divorce, alimony, and child custody decrees; and (2) even when subject matter jurisdiction might be proper, courts should abstain from exercising jurisdiction when "sufficient grounds" exist. *Alliant Tax Credit 31, Inc. v. Murphy*, 924 F.3d 1134, 1146 (11th Cir. 2019).

Here, Scott has invoked the Court's federal question jurisdiction by bringing Fourteenth Amendment claims against Shaw, who Scott alleges is a state actor who provides child protective services. However, "sufficient grounds" exist that warrant abstention. Specifically, Scott's claims in this case are based on a child custody dispute and are intertwined with a number of state court cases and domestic relations matters involving Scott, his wife, and the state.

Okaloosa County court records indicate there are several cases in state court relevant to Scott's pending federal claims. First, Mrs. Scott filed a petition to

establish child support in June 2023.  *See Scott v. Scott*, Okaloosa County Case No. 2023 DR 2427.  The docket for that case indicates the state court issued an order establishing child support in December 2023, shortly before Scott filed for divorce and his spouse left with the children.  The existence of the child support case shows litigation between Scott and his wife regarding their children began well before the events described in the complaint.

Second, Scott filed a petition for dissolution of marriage on January 3, 2024.  *Scott v. Scott*, Okaloosa County Case No. 2024 DR 20.  The docket for that case indicates: (1) Scott and his wife were actively involved in litigation related to their marriage and the custody of their children at the time of the events described in the complaint; and (2) the dissolution proceedings are ongoing.  Indeed, Scott filed an "expedited motion for temporary relief" on February 5, 2024, complaining that Mrs. Scott left their home in January 2024 with the children, concealed the location of the children, and would not permit him to contact the children.[3]  Scott requested that the children "be placed in his immediate care and custody with timesharing for [Mrs. Scott] on alternating weekends."  The state court held a hearing on the motion on March 25, 2024.  The docket does not reveal the outcome of the hearing—and Scott never mentions filing the expedited motion in his complaint—but these filings show:

---

[3] A copy of the expedited motion for temporary relief is attached to this Report and Recommendation.

(1) Scott was litigating issues related to the custody of his children in state court during the same 155-day period he now claims Shaw unlawfully deprived of him custody; and (2) Scott's claims against Shaw would require the Court to delve into the domestic affairs of the Scotts.[4]

Third, on June 10, 2024, Scott filed a petition for injunction for protection against his wife. *Scott v. Scott*, Okaloosa County Case No. 2024 DR 1657. In part, the petition asked that the court provide a temporary parenting plan in which Scott would have custody of the children on alternating weeks and while Mrs. Scott was in jail. Mrs. Scott then filed a similar petition against Scott on July 17, 2024. *Scott v. Scott*, Okaloosa County Case No. 2024 DR 2028. And finally, it appears the state may have commenced a dependency proceeding at some point in 2025. *See* Okaloosa County Case No. 2025 DP 78.

Taken together, these state court cases indicate that both at the time Scott alleges Shaw engaged in misconduct and currently, the Scotts have been embroiled in contested proceedings regarding the dissolution of their marriage and the custody of their children. Moreover, hearing the claims against Shaw would require the

---

[4] The docket for the dissolution proceeding also indicates Scott filed an "emergency petition for custody" and an "amended emergency motion for modification of timesharing" on September 26, 2024, which, together, sought custody of the children and state "[t]here is a FFN Safety plan currently [in] place." These filings were made around the same time an arrest report was filed in a still-pending criminal case charging Mrs. Scott with child neglect without great bodily harm. *State v. Scott*, Okaloosa County Case No. 2024 CF 2254.

Case No. 3:25cv974-TKW-HTC

Court to delve into the domestic relations of the Scotts because the Court would have to inquire into whether Mrs. Scott properly had custody of the children in early 2024 and evaluate whether Mr. Scott's custodial rights had properly been limited. These are issues with which state courts have greater familiarity, and which have been addressed by the court in Okaloosa County. Federal courts have abstained from exercising jurisdiction in similar situations.[5] *See Ingram*, 866 F.2d at 370 (noting federal courts should dismiss an action under the domestic relations exception "if hearing the claim would mandate inquiry into the marital or parent-child relationship"); *Ray v. Ill. Dep't of Children & Family Servs.*, 2023 WL 8254434, at *1 (E.D. Mo. Nov. 29, 2023) (stating the court lacks "jurisdiction over cases involving divorce and child custody under the domestic-relations exception to federal-court jurisdiction" and "[s]tate courts have exclusive jurisdiction over those matters"); *Deaton v. Stephens*, 2023 WL 6131452, at *9 (N.D. Ala. Sept. 19, 2023) (finding the domestic relations exception provided a reason for the court to refrain

---

[5] In his response to Shaw's motion, Scott includes a single sentence addressing the domestic relations exception. Scott states: "This case is not a domestic-relations or custody dispute before a state court; it is a § 1983 action for damages stemming from Defendant's unconstitutional conduct." Doc. 13 at 4. However, Scott takes an overly narrow view of the exception. Other courts have applied the exception to claims seeking damages when those claims require the court to inquire into domestic matters traditionally left to the states. *See Keys v. Presbyterian Child. Home Servs.*, 2025 WL 2299482, at *1-2 (E.D. Mo. Aug. 8, 2025) (dismissing complaint under domestic relations exception that sought damages and alleged federal civil rights violations against defendant for failing to allow plaintiff to see his two sons in accordance with a visitation agreement); *see also Dixit v. Singh*, 758 F. App'x 766, 768 (11th Cir. 2018) ("Because federal courts must also abstain from 'hearing … claim[s] … [that] mandate inquiry into the marital or parent-child relationship,' the district court could not entertain Dixit's claim seeking damages for emotional distress.") (quoting *Ingram*, 866 F.2d at 370).

from adjudicating the plaintiffs' claims because the court "would inevitably be compelled to conduct an inquiry into various aspects of ongoing custody issues"); *Guevara v. Padin*, 2016 WL 7188783, at *3 (S.D. Fla. Nov. 9, 2016) ("Many courts 'willingly apply the domestic relations exception to federal questions and constitutional issues involving intra-family disputes' and 'decline jurisdiction over federal questions which would deeply involve them in adjudicating domestic affairs.'") (citation omitted); *see also In re Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.").

### III. Conclusion

Based on the foregoing, the Court should abstain from hearing Scott's claims under the domestic relations exception to jurisdiction.

Accordingly, it is RECOMMENDED:

1. That Defendant Noah Shaw's motion to dismiss (Doc. 11) be GRANTED, and this case be DISMISSED WITHOUT PREJUDICE.

2. That the clerk close the file.

At Pensacola, Florida, this 12th day of November, 2025.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT,
IN AND FOR OKALOOSA COUNTY, FLORIDA

IN RE THE MARRIAGE OF:

JOHN WILLIAM SCOTT,
Petitioner,

And                                              Case No.: 2024 DR 000020

SAVANNA MICHELLE SCOTT,
Respondent.
_____/

### EXPEDITED MOTION FOR TEMPORY RELIEF

COMES NOW the Petitioner, by and through the undersigned counsel, and files this Expedited Motion For Temporary relief and states:

1. A Petition for Dissolution of Marriage was filed 1/3/24.

2. Prior to that, the parties resided together but not as Husband or Wife.

3. Prior to the filing of the Petition for Dissolution, the Husband informed the Wife that he was filing for divorce.

4. On January 6, 2024, the Husband left the home to go to lunch. When he returned, the Wife, the minor children and the Wife's vehicle were not at home.

5. Since that time, the Wife has refused to respond to the Husband's questions as to where the minor children are located and whether he can see them. She will only respond that they are \ fine.

6. The Wife has hidden the children from the Husband and will not permit any contact.

7. The Wife currently has A pending felony in Walton County 2023 CF 000415 for 3rd DUin 10 years. It is unknown if she is currently drinking.

8. The Wife's actions are in violation of the standing pretrial order that was issued on

1

1/3/24. Although the Wife had not yet been served when she left the marital home with the children on 1/6/24, the Husband has a good faith belief that she was aware of the court filing. If she was not aware at that time, she was served on 1/11/24 and became fully aware of the order at that time and has filed a counterpetition. Despite that, she has refused to respond to their location or to allow the Husband to see the children or speak to them.

9. The Wife's blatant disregard for court orders is of concern to the father. The Wife's behavior is similar to what she has displayed in the past when she refused to cooperate and allow him to see the children when there was a domestic violence injunction in place and order that permitted him to see the children.

10. The Husband request that the minor children be placed in his immediate care and custody with timesharing for the mother on alternating weekends.

_____
John William Scott, Petitioner/Counterrespondent

STATE OF FLORIDA
COUNTY OF OKALOOSA

Sworn to or affirmed and subscribed before me by means of [✓] physical presence or [ ] online notarization, on 2/5/2024 by John Scott.


Notary Public State of Florida
Jessica Michelle Lee
My Commission HH 113317
Expires 04/04/2025

NOTARY PUBLIC or DEPUTY CLERK

Jessica Michelle Lee
[Print, type or stamp commissioned name of notary or deputy clerk.]

____ Personally known
✓ Produced identification
Type of identification produced DL:5300-479-82-341-0

2

## CERTIFICATE OF SERVICE

✓ I certify that a copy of this document was e-mailed to the person listed below on February 5, 2024.

Savanna Michelle Scott
Unknown
Designated E-mail:
VANNA201529@GMAIL.COM

Respectfully submitted,

By: *Susan Winterberger* (signature)
Susan Winterberger
Florida Bar No. 0014068
1455 South Ferdon Blvd. Suite D-1
Crestview, FL 32536
Tel. (850) 398-4315
Fax (850) 398-4320
E-Mail: susan@winterbergerlaw.com
Secondary-Email:
eservice@winterbergerlaw.com
Attorney for Petitioner

3